UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

Kenneth W. Petersen, Jr.,                                    Civil Action No. 5:22-cv-5064

                            Plaintiff,

vs.                                                          **PLAINTIFF'S MOTION FOR
                                                             SANCTIONS ON DEFENDANT'S
Rapid City, Pierre & Eastern Railroad, Inc.                  FAILURE TO APPEAR FOR
                                                             DEPOSITON**

                            Defendant.

TO:     DEFENDANT ABOVE-NAMED AND ITS ATTORNEYS OF RECORD:

        PLEASE TAKE NOTICE, Plaintiff Kenneth W. Petersen, Jr., respectfully moves this Court

under Fed. R. Civ. P. 37(d), and asks the Court to issue an order striking Defendant's denial of

liability and contributory/sole cause defenses[1], Plaintiff's costs for bringing this motion and

incurred as a result of Defendant failing to produce its employees at a noted deposition, and for

whatever other relief the Court determines reasonable and warranted; or in the alternative, for an

order compelling Defendant to produce its employees Tyrell Boudreau, Thomas Burroughs, and

Van Gaudette for depositions,  Plaintiff's costs for bringing this motion and incurred as a result of

Defendant failing to produce its employees at a noted deposition, and for whatever other relief the

Court determines reasonable and warranted based on the following:

                                    **INTRODUCTION**

        Since Plaintiff filed his claim in July of 2022, Defendant Rapid City, Pierre & Eastern

Railroad, Inc. ("RCPE") has avoided fulfilling its most basic discovery obligations, including

---

[1] Leaving for the jury only the question of the nature and extent of Plaintiff's damages.

1

#618477v1

refusing to provide relevant names of witnesses and failing to produce critical responsive information and documents. Now, RCPE is not presenting its identified employees for depositions.

In good faith, Plaintiff attempted for more than eight months to resolve discovery disputes without Court intervention. Plaintiff's counsel, unfortunately, was forced to bring a motion to compel on June 12, 2023. Included in Plaintiff's motion to compel was a request that Defendant be compelled to identify the names of the Defendant's dispatch workers working at the time of the derailment. In response to Plaintiff's motion to compel, on July 3, 2023, Defendant for the first-time directed Plaintiff to three names; Tyrell Boudreau, Thomas Burroughs, and Van Gaudette. Plaintiff quickly moved to schedule the depositions of these individuals. Despite Plaintiff's efforts, Defendant has failed to produce its employees for noted deposition.

<u>**Background**</u>

Plaintiff initiated the pending case by filing his Complaint on July 20, 2022. (See Doc. 1 – Plaintiff's Complaint). Plaintiff's lawsuit is brought under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60, and he seeks damages for injuries suffered on August 2, 2019, while working as a conductor for Defendant. (Id.) at 2. Generally, Plaintiff has alleged RCPE was negligent in its maintenance and upkeep of its tracks and drainage system and that RCPE negligently failed to identify a significant weather event and/or negligently responded to a significant weather event resulting in the derailment of the train Plaintiff occupied. RCPE has denied its liability and asserted that Plaintiff and his crewmate, Michael Hendrickson, were negligent.

2

The facts of Plaintiff's incident are more fully laid out in Plaintiff's motion for partial summary judgment.[2] (Doc. 53-56). Accordingly, Plaintiff lays out here only a brief factual summary.

On the morning of August 2, 2019, Plaintiff was in the course and scope of his employment working as a conductor on Defendant RCPE's train on its tracks near New Underwood, South Dakota. Plaintiff was part of a two-person crew, he, and Michael Hendrickson, were assigned the job to operate a train eastbound out of Rapid City. Previous to their departure there was heavy rainfall with significant accumulation near New Underwood. At approximately 12:34 am on the morning of August 2, 2019, more than two hours prior to the derailment and prior to Plaintiff's departure out of Rapid City, RCPE and its ARDC dispatch center received from its contracted agent, Accuweather, the following warning:

> To: ARDC-RCPE-Weather <ARDC-RCPE-Weather@gwrr.com>
> Subject: GWRR - Rapid City Pierre & Eastern
> Importance: High
>
> WARNING 8196 for GWRR - Rapid City Pierre & Eastern
>
> Start Time: 08/02/19, 12:34 AM CDT
> Expire Time: 08/02/19, 05:00 AM CDT
>
> Locations:
> PRC Sub 1.5 S Wasta (MP 606.5) to PRC Sub 1.0 N New Underwood (MP 628.1)
>
> Conditions:
> Flash Flood
>
> Comments:
> Heavier rain is moving back into the area which has already seen 1.5-3 inches of rain over the last 3 hours. Look for an
> additional 1-2 inches to bring totals into the 2.5-5 inch range. Runoff will also move towards track from the north in this

---

[2] Plaintiff adopts by reference the facts identified in Plaintiff's Motion for Partial Summary Judgment. Doc 53-56.

3

area, thus watch for high water near track, flash flood conditions and potential washouts!

(Doc. 56-11)

As RCPE and its dispatch were warned, the rainwater accumulated in the track bed at the location of the derailment and then washed out the materials supporting the tracks as well as the ties, leaving only the rail and when the train Plaintiff occupied traveled over the washed-out section of track at shortly before 3:00 am on August 2, 2019, the train derailed. The crew had not been provided with any weather warning from RCPE, its dispatch, or Accuweather nor had Defendant conducted any track inspection ensuring the structural integrity of its tracks.

*Dispatcher Discovery*

Defendant's initial disclosures under Rule 26(a)(1) were served on October 21, 2022.[3] Within its disclosures, Defendant identified no individuals who were working in its dispatch center and did not provide the Accuweather warning. In accordance with Rules 33 and 34 of the Federal Rules of Civil Procedure, Plaintiff served his first set of interrogatories and request for production of documents on September 26, 2022. On November 9, 2022, RCPE served its responses. Plaintiff's Interrogatory 1 requested Defendant "Identify by name and address all witnesses (excluding retained experts) who have or may have knowledge regarding the facts alleged in Plaintiff's Complaint." (Doc. 59-2). Plaintiff's Interrogatory 20 further requested Defendant "identify all weather-related alerts and notifications created for the region surrounding New Underwood, South Dakota, for the time period July 25, 2019, through August 3, 2019." (Id.) Defendant did not identify its dispatch workers or the Accuweather warning received by RCPE's dispatch center. (Doc. 59-4) Subsequently, Plaintiff's counsel made several inquiries with

---

[3] .Defendant's discovery misconduct is more fully outlined in Plaintiff's motions to compel and for sanctions previously filed, incorporated herein by reference. (Docs. 31-33, 35, 57-59, 62-64).

4

witnesses and Defendant's counsel as to the names of the dispatchers working at the time of the incident. No witness could identify the dispatch workers. Defendant's counsel continually promised to provide the names of the dispatch workers, yet continually failed to provide such names. (Doc. 32-1 to 32-3). Accordingly, on June 12, 2023, Plaintiff was forced to bring a motion to compel, among other things, the names of the dispatch workers working at the time of the incident. (Doc. 31-33). In its response brief, Defendant for the first-time directed Plaintiff to a document that contained three names; Tyrell Boudreau, Thomas Burroughs, and Van Gaudette.

On July 12, 2023, Plaintiff noted the depositions of the three individuals to occur on July 18 and 19th, the final days of the Court's established discovery deadline. (Exhibit 1, Plaintiff's notices of Deposition for Boudreau, Burroughs, and Van Gaudette dated July 12, 2023). On July 17, 2023, Plaintiff received an email from Defense counsel stating the dates and times noted did not work for Defendant, but that Defendant would "confer on these witnesses' availability and get back to you with some dates." (Exhibit 2, Email from Chad Knight on July 17, 2023). The email further specified that, despite Defendant's response to Plaintiff's motion to compel pointing Plaintiff to a document identifying these three individuals, that it was now Defendant's position that Thomas Burroughs and Tyree Boudreau were not working at the time of the incident.[4] (Id.). Defendant's counsel asked for confirmation that Plaintiff therefore wanted the depositions of these individuals. (Id.)

On that same day, Plaintiff's counsel responded that he did want all three depositions and agreed to enter a motion to extend the deposition deadline for the three witnesses. (Exhibit 4, Email from Plaintiff's Counsel dated July 17, 2023). After discussions between counsels the parties filed

---

[4] Defendant has not further supplemented its responses to Plaintiff's requests for identification of the dispatch workers working on the night of the incident. It is difficult to believe that Defendant only had one dispatch worker working on the night of the incident without any managers or supervisors in attendance. RCPE's own dispatch rules require a conferral between dispatcher and supervisor when a weather warning is received. (Exhibit 4, RCPE Rule 50. - 50.3.)

#618477v1

a joint motion for extension with the Court regarding 4 depositions, including the three dispatch employees and a former track inspector for RCPE that Defendant had been attempting to subpoena. (DOC. 42). In that extension, it was agreed that all depositions would be concluded by September 8, 2023. (Id.)

Subsequently, Defendant, without communication with Plaintiff, unilaterally set the deposition of the former RCPE inspector to occur on August 28th. (Exhibit 5, Defendant's Notice of Deposition of Gabe Larkin). On August 22, after recognizing that Defendant was not going to uphold its promise to provide dates for the three dispatch depositions within the agreed upon timeframe, Plaintiff scheduled them to occur the same week as Defendant's unilaterally noted deposition. (Exhibit 6, Plaintiff's Second Amended Notices of Deposition of Mr. Burroughs, Mr. Boudreau, and Mr. Van Gaudette).

On August 25, Defendant's counsel again stated the dates did not work and that he would "confer with the witnesses and provide available dates." (Exhibit 7, Email from Chad Knight on August 25, 2023). The same day Plaintiff's counsel pointed out that there was limited time left for the depositions and requested an explanation of why the noticed dates did not work. (Exhibit 8, Email from Plaintiff's counsel dated August 25, 2023). Defendant provided no response.

Following the deposition of the former RCPE inspector on August 28, and after receiving no response from Defendant to his prior emails, Plaintiff's counsel met and conferred with Defendant's counsel about the dispatch depositions, pointing out that Plaintiff has been waiting for dates from Defendant since mid-July. (Exhibit 9, Affidavit of Joshua Miller). Defendant's counsel stated that he did not know why his co-counsel or Defendant could not go forward with the depositions. *Id.* When asked why he could not attend, Defense counsel provided no specificity, stating he was busy and refusing to provide an explanation. *Id.* Plaintiff's counsel informed

Defendant's counsel that without an explanation, Plaintiff would not be withdrawing his noted depositions and that Defendant, and its counsel were expected to appear short of filing a motion for a protective order. *Id.*

That same day, Plaintiff's counsel sent an email to Defendant's counsel, again pointing out that Defendant had not provided Plaintiff with agreeable dates as promised as far back as July 17th. Exhibit 10, Email from Plaintiff's Counsel dated August 28, 2023. Defense counsel was, again, told that without an explanation of why the depositions cannot proceed as scheduled and without being provided alternative dates for the depositions, Plaintiff had no choice but to go forward with the depositions noted and on the calendar within the agreed extension period. *Id.*

No response on the subject was received at the time of the depositions. Defendant's employees and its counsel failed to appear for the depositions. No protective order had been issued, filed, or sought.

## **Legal Standard**

Rule 30(d)(2) certifies that the Court "may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent." Likewise, Rule 37(d)(1) certifies that sanctions are proper for a party's failure to appear at a noticed deposition. Under 37(d)(3), "Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)—(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified, or other circumstances make an award of expenses unjust."

The Rule contemplates not just an award of reasonable expenses, including attorney fees, but also directs to Rule 37(b)(2)(A)(i)-(vi) that lists the following just orders:

#618477v1

> (i)      Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii)     Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii)    Striking pleadings in whole or in part;
> (iv)     Staying further proceedings until the order is obeyed;
> (v)      Dismissing the action or proceeding in whole or in part;
> (vi)     Rendering default judgment against the disobedient party; . . . .

In addition to Rules 30 and 37, a federal court has the inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). This inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). In invoking its inherent power, a court "must comply with the mandates of due process." *Plaintiffs' Baycol Steering v. Bayer Corp.*, 419 F.3d 794, 802 (8th Cir. 2005) (quoting *Chambers*, 501 U.S. at 50). Before a district court may impose sanctions, a party must receive notice that sanctions against them are being considered and an opportunity to be heard. *Id.*

"[W]hether the extent of a sanction is appropriate is a question peculiarly committed to the district court." *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 268 (8th Cir. 1993). Substantial deference is given to the "district court's determination as to whether sanctions are warranted because of its familiarity with the case and counsel involved." *Willhite v. Collins*, 459 F.3d 866, 869 (8th Cir. 2006); accord *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007). In choosing between the available sanctions, the Court "is not constrained to impose the least onerous sanction available but may exercise its discretion to choose the most appropriate sanction under the circumstances." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir. 1999). A sanction should be sufficient to remedy the prejudice caused to the moving party, i.e., to restore "the lack of

8

integrity in the case being presented to the jury." *Id.* It should also serve "to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id.* (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

Plaintiff has been denied the ability and opportunity to prepare fully and adequately to present his case and chief and to defend against RCPE's affirmative defenses and assertions. Defendant's dispatch directs traffic speed parameters on Defendant's rail-lines and are the focal point of RCPE's receipt of weather information from its agent Accuweather and disbursement of that information to others within RCPE so that proper actions may be taken. (Exhibit 11, Defendant's Answers to Interrogatories Set 2). Defendant's dispatch is recognized as responsible for failing to prevent the derailment by Defendant's own Roadmaster, Mr. Van Asperen, in a RCPE-Presentation 2019 Engineering Overview. (Doc 56-3). Defendant's dispatches' directions and warnings go to the heart of Defendant's negligent response to a significant weather event and the reasonableness of Plaintiff and his crewmate's conduct at the time of the derailment.

The relevance, significance, and importance of the dispatch crews' testimony cannot be legitimately questioned. Defendant's hiding of the dispatch workers' identities and subsequent failure to produce them for deposition is shocking conduct in a case centered around a track washout as the result of a significant weather event. Plaintiff asks this Court to tell Defendant and its counsel enough is enough, it is not permitted to stand in the way of valid discovery and thumb its nose at the rules of Civil Procedure and their purpose to ensure fairness in the pursuit of justice. Accordingly, Plaintiff requests this Court to strike Defendant's denial of liability and affirmative defenses of contributory and sole cause and find that as a matter of law, RCPE was negligent and that such negligence was the cause of injury to Plaintiff. Leaving only the nature and extent of Plaintiff's damages at issue at trial.

9

<u>**CONCLUSION**</u>

For nearly eight months, Defendant and its counsel have been unwavering in their refusal to fully participate in the discovery process, failing to identify critical witnesses and subsequently failing to produce them for deposition. Plaintiff respectfully requests that the Court grant Plaintiff's Motion and grant the relief as set forth, to:

1) Find, as a matter of law, that Defendant was negligent and that such negligence caused Plaintiff's injuries and striking Defendant's affirmative defenses of contributory negligence and sole cause. Leaving only the issue of damages for trial;

2) In the alternative to number 1) above, compel Defendant to produce its employees Tyrell Boudreau, Thomas Burroughs, and Van Gaudette for deposition;

3) Pay Plaintiff's reasonable attorney's fees and costs associated with this motion to compel and incurred as a result of Defendant failing to produce its employees at the noted depositions; and

4) Any additional forms of relief so desired by the Court, including those discussed herein.

Plaintiff requests oral argument, should the Court have any remaining questions not addressed by the briefing.

Dated:  August 31, 2023

/s/ Aaron Eiesland
Aaron Eiesland
4020 Jackson Boulevard, Suite 4
Rapid City, SD 57701
(605) 545-7667
ae.law@live.com

and

HUNEGS, LENEAVE & KVAS, P.A.
Paul Banker
1000 Twelve Oaks Center Drive, Suite 101
Wayzata, Minnesota  55391
(612) 339-4511
(612) 339-5150 Fax
pbanker@hlklaw.com

ATTORNEYS FOR PLAINTIFF

10

#618477v1

## <u>CERTIFICATE OF SERVICE</u>

     The undersigned hereby certifies that the above Plaintiff's Motion for Sanction Due to Defendant's Failure to Appear for Deposition was served electronically via CM/ECF filing this 31st day of August, 2023, to:

William G. Beck
Seth A. Lopour
WOODS, FULLER, SHULTZ & SMITH, P.C.
P.O. Box 5027
300 South Phillips Avenue, Suite 300
Sioux Falls, SD  57117-5027
Bill.Beck@woodsfuller.com
Seth.Lopour@woodfuller.com

William J. McFadden
KNIGHT NICASTRO AND MACKAY
200 West Adams Street, Suite 2445
Chicago, IL  60606
mcfadden@knightnicastro.com

*/s/ Aaron Eiesland*

11

#618477v1