UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| KENNETH W. PETERSEN, JR.<br><br>Plaintiff,<br><br>vs.<br><br>RAPID CITY, PIERRE & EASTERN R.R., INC.<br><br>Defendant. | 5:22-CV-5064<br><br>MEMORANDUM OPINION AND ORDER DENYING MOTION TO EXCLUDE TESTIMONY OF DR. WADE JENSEN |

Pending before the Court is Plaintiff Kenneth W. Petersen, Jr.'s Motion to Exclude Testimony of Dr. Wade Jensen. (Doc. 46). For the following reasons, the Motion is denied.

## BACKGROUND

Dr. Jensen is licensed physician and dual fellowship trained in orthopedic and neurological spinal surgery. (Doc. 47-1). On May 22, 2023, Dr. Jensen wrote an expert report describing his medical opinions regarding Mr. Petersen's orthopedic injury claims. (Doc. 47-1). In his report, Dr. Jensen opined that Plaintiff sustained a right posterior 11th rib fracture and myofascial neck pain, with intermittent arm numbness as a result of the train derailment accident he was involved in. (Doc. 47-1). Dr. Jensen opined further that his injuries would not prevent him from returning to work because:

> 3.1.1. R posterior 11th Rib fracture was healed with good function and no residual symptoms by 10-28-2019.
>
> 3.1.2. Myofascial neck pain, with intermittent arm numbness was resolved with no residual symptoms on 11-18-2019, and he was returned to work full duty to the railroad by Dr. Vonderau.
>
> 3.2. Neither a rib fracture, or neck pain with intermittent arm symptoms would present him from returning to a [conductor, locomotive engineer, or management office] position at [Rapid City, Pierre & Eastern Railroad, Inc.] ("RCPE").

1

(Doc. 47-1). Dr. Jensen noted in April 2020, after Mr. Petersen had returned to work, he again sought medical treatment for intermittent symptoms of neck pain, headaches, and arm numbness that he was experiencing. (Doc. 47-1). Dr. Jensen further noted that Mr. Petersen had treatments aimed at decreasing these symptoms, that none had been helpful, and that Mr. Petersen was no longer seeking treatment and had not seen a provider for these symptoms for the last 6-7 months. (Doc. 47-1). Dr. Jensen noted that prior to the derailment injuries, Mr. Petersen was on chronic pain medicine for pre-existing lower back pain and remained on the pain medicine. (Doc. 47-1). He opined that Mr. Petersen's myofascial neck pain, intermittent arm numbness and headaches would not require future medical care and treatment because treatment had thus far been unsuccessful. (Doc. 47-1).

On August 1, 2023, Plaintiff filed a Motion to Exclude Testimony of Dr. Wade Jensen. (Doc. 46). Therein, Plaintiff points out typos made by Dr. Jensen in his report and argues that the opinions of Dr. Jensen should be excluded because he did not offer any methodology behind his conclusion, but only "reviewed Petersen's medical records and purports to draw conclusions based on his 'medical knowledge.'" (Doc. 46 at 416). Plaintiff argues that:

> [T]here is no way to test the validity of Dr. Jensen's claim that his "medical knowledge" allows him to draw the conclusions he purports to draw; "because I said so" is not a valid or testable scientific methodology and says nothing about whether the conclusion is based on methods that are valid, tested, peer-reviewed, or generally accepted.

(Doc. 46 at 416). Plaintiff argues that "Dr. Jensen's reasoning is so conclusory that there is no way to tell how he arrived at his conclusions, and consequently, no starting point for attempting to falsify them." (Doc. 46 at 416). Plaintiff contends that "it is impossible to know whether Dr. Jensen believes that Petersen's 2020-to-present current neck pain was caused by the derailment or has an independent source, or why Dr. Jensen apparently did not consider Petersen's current neck pain as relevant to a return to work despite elsewhere apparently considering Petersen's pain untreatable and unresolvable." (Doc. 46 at 417).

On August 15, 2023, Dr. Jensen supplemented his report, correcting three typographical errors in his prior expert report and added an addendum paragraph on the first page of the report that further explained his methodology for his opinions:

2

> My original analysis in my May 22, 2023 Expert Report included all the medical records (nearly 1100 pages) in a review document. The page numbers I reference in the May 22, 2023 Expert Report are from this review document. It has come to my attention that through an error this review document was not sent with my May 22, 2023 Expert Report. I now submit this review document. I have in no way changed my opinions in my May 22, 2023 Expert Report. I have corrected the typos in question 2 and question 8. Further, in the review document, all page numbers are hyperlinked to the medical records to show the reader where the medical information comes from.

(Doc. 74-2).

On August 23, 2023, Defendants filed its brief in opposition to the Motion to Exclude Testimony of Dr. Jensen. (Doc. 74). Therein, Defendants argue that "Dr. Jensen did a medical review, which is a common and widely accepted methodology" and that Dr. Jensen's experience and opinions, based on a reasonable degree of medical certainty, generally provide a sufficient basis for an admissible opinion. (Doc. 74 at 3091). Defendants note as well that Plaintiff's counsel did not depose Dr. Jensen. (Doc. 74 at 3084).

In his reply brief to the Motion to Exclude Testimony of Dr. Jensen, Plaintiff argues that the August 2023 supplement provided by Dr. Jensen is unavailing because Dr. Jensen's conclusions still remain unsupported by any methodology or reasoning. (Doc. 84 at 3235). As an example, Plaintiff states that it is still impossible to know from Dr. Jensen's supplemental report whether he believes Mr. Petersen's 2020-to-present current neck pain was caused by the derailment or has an independent source, or why Dr. Jensen apparently did not consider Mr. Petersen's current neck pain as relevant to a return to work despite elsewhere considering his pain untreatable and unresolvable. (Doc. 84 at 3235).

## STANDARD OF REVIEW

Rule 702 of the Federal Rules of Evidence sets forth the standard for expert testimony, allowing an expert to testify in the form of an opinion or otherwise if:

a. The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
b. The testimony is based on sufficient facts or data;
c. The testimony is the product of reliable principles and methods; and
d. The expert has reliably applied the principles and methods to the facts of the case.

*See* Fed. R. Evid. 702(a)-(d).

Rule 702 requires the trial judge act as a "gatekeeper," admitting expert testimony only if it is relevant and reliable. *See Daubert v. Merrell Dow Parms., Inc.*, 509 U.S. 579, 597 (1993). The trial court is given broad discretion in its determination of reliability. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999). "Questions of an expert's credibility and the weight accorded to his testimony are ultimately for the trier of fact to determine." *Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1183 (8th Cir. 1997). "Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Id.*

The Eighth Circuit Court of Appeals has established three prerequisites that must be satisfied for expert testimony to be admitted under Rule 702:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, "the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires. . . ."

*Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). "Rule 702 does not permit a judge to weigh conflicting expert testimony, admit the testimony that he or she personally believes, and exclude the testimony that he or she does not personally believe." *Olson v. Ford Motor Co.*, 481 F.3d 619, 626 (8th Cir. 2007). "Nor does Rule 702 permit a judge to exclude expert testimony just because it seems doubtful or tenuous." *Id.* "The Supreme Court has been clear about how infirmities in expert testimony should be exposed: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (citing *Daubert*, 509 U.S. at 596).

## DISCUSSION

Plaintiff argues that Dr. Jensen's opinions are unreliable and should be excluded because they are bare conclusions devoid of any reasoning or methodology that may be tested.

The United States Supreme Court has held the Federal Rules of Evidence, especially Rule 702, assign to the trial judge the task of ensuring that an expert's testimony rests on a reliable foundation. *See Daubert*, 509 U.S. at 597. "When determining the reliability of an expert's opinion, a court examines the following four non-exclusive factors: (1) whether the expert's theory

of technique "can be (and has been) tested;" (2) "whether the theory or technique has been subjected to peer review and publication;" (3) "the known or potential rate of error;" and (4) "general acceptance." *Ackerman v. U-Park, Inc.*, 951 F.3d 929, 932-33 (8th Cir. 2020) (citing *Daubert*, 509 U.S. at 593-94). "These factors are not exclusive or exhaustive and the court may tailor its inquiry to fit the particular facts of a case." *Id.* at 933. "As the gatekeeper, the district court's role is to discern 'expert opinion evidence based on "good grounds" from subjective speculation that masquerades as scientific knowledge.' " *Id.*

The advisory notes to Rule 702 make clear that "some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular field of expertise." In such cases, a court must find that the testimony is grounded, well-reasoned, and not speculative before it can be admitted." Fed. R. Civ. P. 702. "There is no single requirement for admissibility of expert testimony as long as the proffer indicates that the expert evidence is reliable and relevant." *In re Prempro Prods. Liab. Litig.*, 586 F.3d 547, 565 (8th Cir. 2009). The proponent of expert testimony bears the burden of proving its admissibility by a preponderance of the evidence. *Lauzon*, 270 F.3d at 686.

Plaintiff argues that Dr. Jensen's opinion that Mr. Petersen's orthopedic injuries do not prevent him from returning to work in a conductor, locomotive engineer, or management office position at RCPE, and his opinion that Mr. Petersen's orthopedic injuries do not require future medical treatment, are unreliable. This Court disagrees. Courts have found that reviewing medical records in light of medical expertise to be an accepted methodology regarding diagnosis and treatment plans. *See Rossi v. Groft*, Civ. No. 10-50240, 2013 WL 1446502, at *3 (N.D. Ill. Apr. 9, 2013); *Heard v. Illinois Dept of Corrections*, Civ. No. 06-0644, 2012 WL 2524748, at *3 (N.D. Ill. June 29, 2012); *see also Kumho*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."); *Shuck v. CNH Am., LLC*, 498 F.3d 868, 875 (8th Cir. 2007) ("Observations coupled with expertise generally may form the basis of an admissible expert opinion."). In his report, Dr. Jensen noted that Mr. Petersen had received treatment for his myofascial neck pain, headaches, and arm numbness, that Mr. Petersen testified that the treatments had not provided lasting relief, and that he was no longer seeking treatment for these conditions. Dr. Jensen opined that based on Mr. Petersen's past response to treatment and his professional expertise, he did not believe future treatment being of

5

benefit for Mr. Petersen's myofascial condition. In addition, Dr. Jensen opined that Mr. Petersen's medical records and deposition testimony did not reveal a condition so debilitating as to make him unable to work. The Court finds that these opinions are sufficiently reliable in light of Dr. Jensen's expertise. Plaintiff may examine the factual basis for Dr. Jensen's opinions on cross-examination. *See Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001). The Court does not find Dr. Jensen's opinions to be "so fundamentally unsupported that [they] can offer no assistance to the jury." *Id.* at 929-30. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Motion to Exclude Expert Testimony of Dr. Jensen (Doc. 46) is DENIED.

Dated this 26th day of September, 2023.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THIELEN, CLERK