UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| KENNETH W. PETERSEN, JR.<br><br>Plaintiff,<br><br>vs.<br><br>RAPID CITY, PIERRE & EASTERN R.R., INC.<br><br>Defendant. | 5:22-CV-5064<br><br>**MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SANCTIONS, DENYING DEFENDANT'S MOTION TO COMPEL, DENYING DEFENDANT'S MOTION FOR STATUS CONFERENCE, AND DENYING DEFENDANT'S MOTION FOR PROTECTIVE ORDER** |

The following motions are the subject of this Memorandum Opinion and Order: Plaintiff's Motion for Sanctions (Doc. 57), Plaintiff's Motion for Sanctions for Forged Medical Authorization (Doc. 62), Defendant's Motion to Compel Production of Executed Medical Records Authorizations (Doc. 85), Defendant's Motion for Hearing Requesting Status Conference (Doc. 91), and Defendant's Motion for Protective Order for a Rule 30(b)(6) deposition (Doc. 98). The Court will address each motion in turn.

**I.   Motion for Sanctions**

**A. Background**

On September 26, 2022, Plaintiff served upon Defendant Plaintiff's Interrogatories to Defendant, Set One and his Request for Production of Documents to Defendant, Set One. (Doc. 59-2; 59-3). In Set One of Plaintiff's Request for Production of Documents, Plaintiff requested the following:

> 34. All documents, alerts, notifications, and reports pertaining to the New Underwood Region of South Dakota for the time period of July 25, 2019, through August 3, 2019.
>
> 35. All documents pertaining to weather information pertaining to the New Underwood Region of South Dakota for the time period of July 25, 2019 through August 3, 2019.

1

(Doc. 59-3). In response, on November 9, 2022, Defendant provided RCPE's Daily Operation Bulletin. (Doc. 59-5). In Defendant's Answer to Set One of Plaintiff's Request for Interrogatories, Defendant identified Mike Kellar as the roadmaster who oversaw this area of the track at the time of the incident. (Doc. 59-4). Defendant also identified, among others, Rod Wiseman, general manager for RCPE, and Jared Rutherford and Jared Hook, track inspectors who inspected the location in the lead up to the incident, as potentially having discoverable information. (Doc. 59-4).

In February 22 and 23, 2022, Plaintiff deposed Mike Kellar, Assistant General Manager of RCPE and Rod Wiseman, General Manager of RCPE. (Docs. 59-6, 59-8). During his deposition, Rod Wiseman testified that he did not know whether there was a major weather event that occurred during the area of the incident on August 2 or August 1, 2022. (Doc. 59-6, Wiseman Dep. 96:6-11). He testified that RCPE uses a service called AccuWeather, that everyone receives these AccuWeather notifications, but that it is dispatcher's responsibility to follow AccuWeather and let conductors and engineers know that there's a weather event going on in their path. (Doc. 59-6, Wiseman Dep. 96:12-97:15). Mr. Wiseman testified that he could not recall whether he looked at AccuWeather on August 2, 2019. (Doc. 59-6, Wiseman Dep. 97:21-25). He testified that AccuWeather makes the call whether there is a significant weather event, not RCPE. (Doc. 59-6, Wiseman Dep. 98:12-18).

Mike Kellar, the roadmaster who oversaw that area of the track at the time, testified that on the night in question, nobody received any notifications from AccuWeather of any weather-type events. (Doc. 59-8, Kellar Dep. 47:22-48:1). He testified that he believed Rod Wiseman and Blake Jones or somebody did an investigation of why RCPE was not notified of certain weather coming through the area and he believed they found out that the storm was far to the north and was not close enough to the tracks to determine that it would affect that railroad in any way. (Doc. 59-8, Kellar Dep. 48:2-12).

On March 2, 2023, Plaintiff deposed Jared Rutherford who was working as a track inspector that evening for RCPE. (Doc. 66-5). Mr. Rutherford testified that he was working about 75 miles from the derailment site and that he was not aware that there was a rainstorm going on around that area. (Doc. 66-5, Rutherford Dep. 34:11-20). He testified that if RCPE has a significant weather event, he will be informed "by my boss or my boss's boss, or by someone who

makes decisions as far as where we go, how we go, when we go . . . whatever the weather event is, depending on the severity of it . . . he will get in touch with who he needs to go out. Usually it will be me as a track inspector or Justin [Hook] as a track inspector. . . ." (Doc. 66-5, Rutherford Dep. 60:15-24). He testified that his boss makes the determination of whether to inform the track inspectors of a severe weather event and whether to inspect track based upon SkyGuard reports. (Doc. 66-5, Rutherford Dep. 61:7-11). Mike Kellar was his roadmaster and then Tyler Van Asperen a little while later. (Doc. 66-5, Rutherford Dep. 18:6-12). On March 21, 2023, Plaintiff deposed track inspector, Jared Hook. (Doc. 66-6). Mr. Hook testified that he would be notified by the roadmaster when he needed to do a storm patrol. (Doc. 66-6, Hook Dep. 38:11-22). He testified that he did not know there was a storm in the area the night of the derailment. (Doc. 66-6, Hook Dep. 39:24-40:5).

On June 23, 2023, Defendant produced its Fourth Supplemental Responses to Plaintiff's Request for Production, Set One. (Doc. 66-11). Therein, Defendant disclosed a pdf copy of the August 2, 2019, the following email from SkyGuard@AccuWeather.com received Mike Kellar, Blake Jones, and Mr. Burroughs:

Importance: High

WARNING 8196 for GWRR – Rapid City Pierre & Eastern
Start Time: 08/02/19, 12:34 AM CDT
Expire Time: 08/02/19, 5:00 AM CDT

Locations:
PRC Sub 1.5 S Wasta (MP 606.5) to PRC Sub 1.0 N New Underwood (MP 628.1)

Conditions;
Flash Flood

Comments:
Heavier rain is moving back into the area which has already seen 1.5-3 inches of rain over the last 3 hours. Look for an additional 1-2 inches to bring totals into the

3

2.5-5 inch range. Runoff will also move towards the track form the north in this area, thus watch for high water near track, flash flood conditions and potential washouts!

(Doc. 59-13). This email had been produced to the plaintiff's counsel in the companion case, *Hendrickson v. RCPE*, on May 3, 2023. (Civ. No. 22-5093, Doc. 52-15).

On July 21, 2023—after the July 19, 2023 discovery deadline—in Defendant's Ninth Supplemental Responses to Plaintiff's Requests for Production of Documents, Set One, Defendant disclosed that in addition to Mike Keller and Blake Jones, the following other individuals and groups received the August 2, 2019 SkyGuard/AccuWeather flash flood warning: ARDC Dispatcher Group; ARDC RCPE Management; Chad Roob; Chase Hart; Crystal Blasius; Daniel Dalton; Gina Zink; Greg Mellon; John McDonald; Michael Anderson; Rod Wiseman; Ted Gibson; and Timothy Paluch. (Doc. 66-17). Defendant also disclosed for the first time a RCPE PowerPoint presentation that discussed the derailment. Therein, it stated that "ARDC ["American Rail Dispatching Center"] Received A Skyguard Alert For A Flashflood Warning for The Area But Allowed the Train to Depart Without Notifying Anyone Of The Alert Or Without Restrictions." (Doc. 66-17; 59-14). On July 21, 2023, Plaintiff disclosed for the first time 170 photos of the derailment site taken by Tyler Van Asperen August 2, 2019 through August 23, 2019. (Doc. 66-17). Plaintiff had asked in Set One of Plaintiff's Interrogatories served on September 26, 2022, for "all photographs, videos, maps, drawings, diagrams, measurements, visual representations, or other descriptions regarding the facts alleged in Plaintiff's Complaint," yet these photographs were not produced until after the discovery deadline on July 21, 2023. (Doc. 59-2). Moreover, Mike Kellar had testified during his February 23, 2023, deposition that he did not recall Tyler Van Asperen working on the derailment at all. (Doc. 59-8, Kellar Dep. 71:14-72:8).

On August 1, 2023, Plaintiff filed a Motion for Sanctions. (Doc. 57). Therein, Plaintiff states that since June 22, 2023, Plaintiff received "continuous dumps of previously undisclosed, relevant, and critical documentation and information that ha[d] been within Defendant's custody and control since before this litigation was initiated." (Doc. 57 at 751). Plaintiff states also that disclosed to him two days after the close of discovery by Defendant was 170 photographs taken by Defendant's employee Tyler Van Asperen, an email from Skyguard warning of potential washouts prior to the derailment at issue along with a list of the email's recipients, and a PowerPoint presentation by an employee of RCPE that states Defendant's dispatch "Received a

4

Skyguard Warning Alert for a Flashflood Warning for The Area But Allowed the Train to Depart Without Notifying Anyone Of The Alert Or Without Restrictions." (Doc. 57 at 752). Plaintiff states that these disclosures occurred after all depositions had concluded and after expert disclosures had been served and that he was prevented from inquiring about these disclosures during depositions.

Plaintiff moves for sanctions under Rule 37(c)(1) of the Federal Rules of Civil Procedure. Plaintiff characterizes Defendant's actions as intentional concealment. (Doc. 57 at 758). Plaintiff requests that the Court sanction Defendant by finding RCPE liable for Plaintiff's negligence claim and by ordering monetary sanctions. (Doc. 57 at 761-72). Plaintiff requests that the Court preclude Defendant from relying on evidence produced in its "discovery dumps" and award attorneys' fees to Plaintiff for the costs of bringing the present motion. (Doc. 57 at 763, 765). In the alternative, Plaintiff asks that the Court re-open discovery for Plaintiff to allow him to take and retake depositions with the opportunity to utilize the document dumps, along with the associated costs, including attorney fees, in conducting such discovery. (Doc. 57 at 762). Accompanying this Motion is Plaintiff's Rule 37.1 Certificate of Good Faith Conference. (Doc. 58).

Defendant opposes Plaintiff's Motion for Sanctions. (Doc. 66). Defendant states that Plaintiff did not meet and confer with defense counsel prior to filing the Motion. Defendant moves the Court to strike the Motion, arguing that Plaintiff has provided no evidence that RCPE and its counsel intentionally concealed evidence. (Doc. 66 at 2029-30). Defendant states that RCPE provided nine supplements to its responses to Plaintiff's first set of Requests for Production of Documents, two supplements to its answer to Plaintiff's first set of Interrogatories, four supplements to its responses to Plaintiff's second set of Requests for Production of Documents, and two supplements to its answer to Plaintiff's second set of Interrogatories, along with participating in eleven depositions. (Doc. 66 at 2030). Defendant states that it worked diligently to provide supplemental responses to written discovery requests as new information became available. (Doc. 66 at 2037). Defendant argues that Plaintiff's Motion for Sanctions was filed in bad faith and in violation of Rule 11. (Doc. 66 at 2038). Counsel for Defendant, Mr. Knight, attests that the attorney who signed the Motion for Sanctions on behalf of Plaintiff, Jeffrey Collins, has since withdrawn and disavowed the Motion and does not agree with or condone the "accusations" made in against RCPE and its attorneys. (Doc. 66 at 2029 n.2). The portion of the

attestation which states that Attorney Jeffrey Collins disapproves of the Motion for Sanctions by Plaintiff is not true. Attorney Collins expressly stated to the contrary in his Affidavit to the Court. (Doc. 69-1).

### B. Standard of Review

Federal Rule of Civil Procedure 26(a) requires litigants to make certain disclosures. *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018). Rule 26(e)(1) requires a party to "timely" supplement or correct an interrogatory answer or request for production "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). The "timely manner" inquiry of Rule 26(e) considers when the new facts were supplemented relative to when the new facts were discovered by the supplementing party. *Hysitron Inc. v. MTS Sys. Corp.*, Civ. No. 07-1533, 2010 WL 55987, at *6 (D. Minn. Jan. 4, 2010). Rule 26(e) is "not an invitation to hold back material items and disclose them at the last moment." Wright & Miller, *Federal Practice & Procedure*, § 2049.1 (3d ed.); *see also Steady State Imaging, LLC v. Gen. Electric Co.*, Civ. No. 17-1048, 2018 WL 2047578, at *9 (D. Minn. May 2, 2018) (plaintiff's "close-of-discovery supplementation" was "not 'timely' for purposes of Rule 26(e)(1)" because the information was essential to defendant's understanding of the reason it was sued; plaintiff "viewed focusing on its litigation priorities as more important than actually identifying the [factual information] that formed the very basis of two of [its] claims"). If there is an untimely delay between finding the new facts and disclosing them through supplementation, then supplementation has not been effectuated in a timely manner. *Hysitron*, 2010 WL 55987 at *6. The duty to supplement continues past the discovery deadline and up to the time of trial. *Fair Isaac Corp. v. Fed. Ins. Co.*, 337 F.R.D. 413, 419 (D. Minn. Jan. 20, 2021) (citing *Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 343, 345 (8th Cir. 1979)).

The disclosure mandates in Rule 26 are given teeth by the threat of sanctions in Rule 37. *Vanderberg*, 906 F.3d at 702. Rule 37(c)(1) provides that when a party fails to comply with the disclosure requirements in Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) further provides:

6

> In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). The purpose of sanctions under Rule 37(c) is "to deter abuse and compensate the opposing party for 'all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly.'" *Johnson Int'l Co. v. Jackson Nat. Life Ins. Co.*, 19 F.3d 431, 439 n.10 (8th Cir. 1994) (citation omitted).

If a party fails to provide information in compliance with Rule 26(a) or (e), the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (citing Fed. R. Civ. P. 37(c)(1)); *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) ("failure to disclose in a timely manner is equivalent to failure to disclose"). In determining whether the failure to supplement is justified or harmless and to help decide upon an appropriate sanction or remedy, the district court should consider the reason for the noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of trial, and the importance of the information or testimony. *Id.* However, a district court's discretion narrows as the severity of the sanction or remedy it elects increases. *Id.* For example, where exclusion of evidence is tantamount to dismissal of claims, the Eighth Circuit has held that a court should consider lesser sanctions. *See Heartland Bank v. Heartland Home Fin., Inc.*, 335 F.3d 810, 817 (8th Cir. 2003).

## C. Application

Defendant argues that the Court should deny Plaintiff's Motion for Sanctions because Plaintiff failed to comply with the meet and confer requirement of Rule 37(1)(2)(A). The Eighth Circuit Court of Appeals has made clear, however, that the meet and confer requirement does not apply to a Rule 37(c)(1) motion for sanctions for failure to disclose or supplement as required by 26(a) or (e). *See Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 707 (8th Cir. 2018) ("Petco did not violate the meet and confer requirement of Rule 37(a)(1) because that

requirement does not apply to requests for exclusion of evidence under Rule 37(c)(1)."); *see also E & I Global Energy Servs., Inc. v. Liberty Mut. Ins. Co.*, Civ. No. 4:20-4033-KES, 2023 WL 372106, at*2 (D.S.D. Jan. 24, 2023) (stating that the meet and confer requirement only applies to motions to compel discovery under Rule 37(a)(1), not to a motion brought under Rule 37(c) for a failure to disclose).

The Court also does not find that Plaintiff's Motion was, as argued by Defendant, brought in bad faith. In support of its bad faith argument, counsel for Defendant, Mr. Knight, attests that the attorney who signed the Motion for Sanctions on behalf of Plaintiff, Jeffrey Collins, has since withdrawn and disavowed the Motion and does not agree with or condone the "accusations" made against RCPE and its attorneys. (Doc. 66 at 2029 n.2). It is not true that Attorney Collins disavowed the Motion. Mr. Collins has subsequently filed an affidavit with this Court. (Doc. 83-1). Therein, he explains that his withdrawal was not in any way connected with a disavowal of the Motion for Sanctions filed by Plaintiff, but was due to the fact that this matter was transferred to counsel of record, Aaron Eiesland's, new law firm. (Doc. 83-1). Mr. Collins attests that in his conversation with Mr. Knight, he stated not that he did not condone or believe that accusations in the Motion for Sanctions, but rather that in cases in which he worked with Mr. Knight previously, he had not observed Mr. Knight's firm to behave in the manner accused of in the Motion for Sanctions. (Doc. 83-1). Mr. Collins affirmed that he was not directly involved in the case prior to August 1, 2023, and was not part of the discovery interactions and discussions between the parties and that his affidavit submitted with the Motion for Sanctions therefore did not refer to the content of these interactions. (Doc. 83-1).

When considering a Rule 37(c)(1) motion for sanctions for failure to supplement disclosures and responses under Rule 26(e)(1), the Court must determine whether the disclosing party corrected or supplemented the disclosures in a timely manner. The "timely manner" inquiry of Rule 26(e) considers when the new facts were supplemented relative to when the new facts were discovered by the supplementing party. *Hysitron Inc. v. MTS Sys. Corp.*, Civ. No. 07-1533, 2010 WL 55987, at *6 (D. Minn. Jan. 4, 2010). Here, on September 26, 2022, Plaintiff served upon Defendant Set One of Plaintiff's Request for Production of Documents, requesting the following information:

> 34. All documents, alerts, notifications, and reports pertaining to the New Underwood Region of South Dakota for the time period of July 25, 2019, through August 3, 2019.
>
> 35. All documents pertaining to weather information pertaining to the New Underwood Region of South Dakota for the time period of July 25, 2019 through August 3, 2019.

(Doc. 59-3). In response, on November 9, 2022, Defendant provided RCPE's Daily Operation Bulletin, but not the August 2, 2019, AccuWeather/SkyGuard flash flood warning that many individuals within RCPE received approximately 90 minutes prior to the derailment. (Doc. 59-5). This email was not disclosed until May 3, 2023, in the companion *Henderson* case, Civ. No. 22-5063, and not until June 23, 2023, in this case—well after the February and March depositions of several of the primary witnesses in this case had taken place. The full list of RCPE recipients of the Flash Flood weather alert was not disclosed until July 21, 2023, after the July 19, 2023, discovery deadline had passed. Defendant provides no explanation for its delay in disclosing this vital document that was received by a large number of individuals and groups within RCPE, including several of the pertinent witnesses in this case.

The Court finds that Plaintiff was prejudiced by Defendant's failure to supplement its disclosure in a timely manner. The deposition testimony by track inspectors Jared Rutherford and Jared Hook that accompanied this motion stated that if RCPE receives a significant weather event, the roadmaster for that section of track (Mike Kellar in this case) or his boss would direct the inspectors to do storm patrol. In his February 22, 2022, deposition, Rod Wiseman, the General Manager of RCPE, testified that he did not know whether there was a major weather event that occurred during the area of the incident and on February 23, 2022, Mike Kellar testified that no one had received any notifications from AccuWeather or any weather-type events. This was not the case, as evidenced by the long list of RCPE recipients (including Mr. Kellar and Mr. Wiseman) who had received the AccuWeather/SkyGuard flash flood warning at 12:34 a.m., about 90 minutes prior to the derailment. There is no indication in the record before the Court that Plaintiff was otherwise aware that these individuals or others within RCPE had received this flash flood warning. Plaintiff was therefore not able to question key witnesses about their receipt of this weather alert during depositions that took place months prior to Defendant's untimely disclosure.

Who in RCPE received this AccuWeather flash flood alert for the area is an important fact and in Plaintiff's Motion for Partial Summary Judgment that is pending with the Court, Defendant

appears to contest who within RCPE received the email. Plaintiff's statement of material facts provides that "about 90 minutes before the derailment, at 12:34 a.m. on Friday, August 2, 2019, RCPE received the "Flash Flood" warning sent with 'High' important, relevant to mile markers that encompassed the derailment sight to RCPE." (Doc. 55, ¶ 37). In its response, RCPE disputes these facts, stating that "the referenced document purports to have been sent to certain employees at RCPE at 12:34 am. The document does not establish who received the email or when it was received." (Doc. 63, ¶ 37). Of course, due to the untimely disclosure, Plaintiff did not have an opportunity to question Mike Kellar, Rod Wiseman, or others about their receipt of the flash flood email and the Court finds that Plaintiff was prejudiced thereby.

In his Motion, Plaintiff requests that the Court sanction Defendant by finding RCPE liable for Plaintiff's negligence claim and by ordering monetary sanctions. (Doc. 57 at 761, 763). Plaintiff requests that the Court preclude Defendant from relying on evidence produced in its "discovery dumps" and award attorneys' fees to Plaintiffs for the costs of bringing the present motion. In the alternative, Plaintiff asks that the Court re-open discovery for Plaintiff to allow him to take and retake depositions with the opportunity to utilize the document dumps, along with the associated costs, including attorney fees, in conducting such discovery. (Doc. 57 at 763). One of the purposes of sanctions under Rule 37(c) is "compensate the opposing party for 'all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly.'" *Johnson Int'l Co. v. Jackson Nat. Life Ins. Co.*, 19 F.3d 431, 439 n.10 (8th Cir. 1994) (citation omitted). The Court, having found Defendant's disclosure of the flash flood alert to be untimely and Plaintiff to have suffered prejudice thereby, will allow Plaintiff until April 1, 2024, to retake any depositions he deems necessary and orders that Defendant bear the associated costs, including court reporter and attorneys' fees associated with these depositions.

## II.   Motion for Sanctions Forged Medical Authorization

Plaintiff has made a Motion for Sanctions due to an altered medical authorization. (Doc. 62).

### A. Background

During discovery, Defendant requested that Plaintiff produce, among other documents, the following:

10

> REQUEST NO. 4: All medical records from the last ten years from any hospital, physician, surgeon, chiropractor, therapist, or other health provider.
>
> . . .
>
> REQUEST No. 5: Signed authorizations, including authorizations in compliance with the Health Insurance Portability and Accountability Act ("HIPAA"), to enable defendants to reasonably obtain other discoverable records.

(Doc. 64-1).

In response to Defendant's Request No. 4, Plaintiff objected to the request as over-broad, asserting that the information sought was not proportional to the needs of the case, including the burden and expense of the proposed discovery relative to its likely benefits, and that the information sought was privileged medical information not put at issue by Plaintiff in the litigation. (Doc. 64-2). In response to Request No. 5, Plaintiff likewise objected to the "overly broad" request, asserting the same objections as were in response to Request No. 4. (Doc. 64-2).

On March 7, 2023, Plaintiff mailed to defense counsel executed medical authorizations directed to the following: Rehab Doctors, Starseed Acupuncture & Wellness, Rapid City Medical Center, M Health Fairview U of M Medical Center, Horse Sense Counseling, Black Hills Orthopedic & Spine Center, Rapid City Medical Center South. (Doc. 64-3). The Black Hills Orthopedic & Spine Center authorization contained, among other information: the name of the medical provider, a statement that the information in the release was needed for the purpose of litigation, the specific type of medical information to be disclosed, a statement that only an original copy of the release authorization was valid, and Petersen's original signature. In the release authorization, Plaintiff limited his medical record disclosure by making an "x" on the lines next to types of information for which he permitted disclosure. (Doc. 64-3). Specifically, Plaintiff permitted disclosure of the following information: history & physical, consultation, progress notes, radiology reports/films, billing records, discharge summary, lab, social history, psychological testing, mental issues, correspondence, operative notes, emergency room reports, counselor's discharge summary, dismissal instructions, physical therapy, all records. (Doc. 64-3). Of the 19 types of information listed, Plaintiff clearly marked "NO" next to three: Drug/Alcohol abuse, HIV/AIDS, and All Records. (Doc. 64-3).

On May 14, 2023, the RCPE attorneys mailed Black Hills Orthopedic & Spine a cover letter bearing the name of Rachel Ford, paralegal of Knight Nicastro MacKay in Peoria, Illinois,

and Plaintiff's authorization form. (Doc. 90-6). The cover letter provided that "Pursuant to the enclosed executed HIPAA release, please forward copies of any and all medical records, including any radiology film and or imaging (x-rays, MRIs, CT scans, etc.), and medical bills in accordance with the authorization.") (Doc. 90-6). Defendant states in its brief that it learned from Black Hills Orthopedic & Spine Center that the request had been rejected because the "all records" box was marked "no." (Doc. 89 at 3305). Defense counsel informed Plaintiff's counsel via email on May 15, 2023, that the authorization had been rejected because: 1) the "All Records" box was marked "No" and 2) they want it to specifically say "All dates of service." (Doc. 90-7). Defense counsel requested that a new provider specific release be executed and returned. (Doc. 90-7). Defendant states in its brief that Plaintiff's counsel did not respond to the email indicating whether they would provide a different authorization. (Doc. 89 at 3305).

On May 16, 2023, at 4:24 pm, defense counsel faxed to Black Hills Orthopedic & Spine, an updated cover letter bearing the name of Gillian Grunkemeyer, paralegal with Knight Nicastro McKay in Boulder, Colorado, authorizing Defendant to obtain copies of his records from "all dates of service." (Doc. 64-5). The cover letter further provided that:

> Pursuant to the authorization, we would ask that your office provide to us an electronic copies or photocopies of any and all records in your files including, but not limited to:
>
> History & Physical, Consultation, Progress Notes, Radiology Reports/Films, Billing Records, Discharge Summary, Lab, Social History, Psychological testing, Mental issues, Correspondence, operative notes, Emergency Room Report, Counselor's Discharge Summary, Dismissal Instructions, and Physical Therapy.

(Doc. 64-5). On page 3 of Plaintiff's fax was Plaintiff's executed authorization form. (Doc. 64-5). The fax that had been produced on June 23, 2019, as part of its Fourth Supplemental Responses to Plaintiff's Request for Production of Documents, showed that Plaintiff's medical authorization to Black Hills Orthopedic & Spine had clearly been altered by removing Plaintiff's indication of "NO" to the release of "All Records," and replacing it with an "X" in indicating Plaintiff intended to release "All Records." (Doc. 64-5).

On June 5, 2023, Plaintiff's counsel agreed to have his client execute a new provider specific authorization. Defense counsel received this authorization on June 9, 2023. (Doc. 90-10). The signed authorization permitted Black Hills Orthopedic & Spine Center to release

Plaintiff's progress notes, operative reports, imaging reports, and lab work from all dates of service. (Doc. 90-10).

Defendant states in its brief that before it had an opportunity to send the newly executed release to Black Hills Orthopedic & Spine, it received Plaintiff's medical records pursuant to the original release. (Doc. 89 at 3306). In response to Plaintiff's Motion for Sanctions, Defendant acknowledges that the medical release that was produced was altered. Defendant states in its brief that the release was altered downstream from defense counsel. (Doc. 89 at 3306). In support, Defendant notes that the cover letter and release that was produced contained multiple alterations with what appears to be a pdf editing software. (Doc. 89 at 3306). Defendant notes that a large circle was added at the tope of page 1, that multiple checkmarks had been added on page 1 and page 2, and said that the "X" was added to the line next to "all records." (Doc. 64-5). Defendant argues that "[r]egardless of who may have altered the release, the effect remains the same," in that the medical records received did not include records related to drug/alcohol abuse or HIV/AIDS and were identical to the records produced by Plaintiff in his initial disclosures. (Doc. 89 at 3306).

**B. Discussion**

There is no doubt that the medical authorization was altered. The question is who altered it? It was either altered by someone in the office of defense counsel or it was altered by the Black Hill Orthopedic & Spine Center either on its own or by authorization from someone in the law firm of defense counsel.

Defense counsel says there was no attempt by Plaintiff's counsel for a good faith conference. But this dispute is not about a failure to disclose in discovery under Federal Rule of Civil Procedure 37. In a typical discovery dispute, failure to confer or attempts to confer in good faith would preclude sanctions under Federal Rule of Civil Procedure 37 and Local Rule 37.1 of the District of South Dakota. This Motion for Sanctions draws upon the inherent power of the Court rather than the typical requirements and procedures for sanctions under Federal Rule of Civil Procedure 37 and Local Rule 37.1. *See Harlan v. Lewis*, 982 F.2d 1255, 1259 (8th Cir. 1993) (discussing the court's inherent power to impose sanctions). That distinguishes this motion from those in which prejudice must be shown. *See Eng'g & Constr. Innovations, Inc. v. Bradshaw Const. Corp.*, Civ. No. 20-CV-0808, 2022 WL 3585153, at *2 (D. Minn. Aug. 22, 2022) (stating that " 'if a party fails to provide information or identify a witness as required by Rule 26(a) [or

13

(e)],' that failure may be excused only if 'the failure was substantially justified or harmless.' "); *Braun v. Menard Inc.*, Civ. No. 4:11-CV-051, 2013 WL 123712, at *4 (D.N.D. Jan. 9, 2013) ("Sanctions are appropriate under Rule 37(c)(1) when the offending conduct was neither substantially justified nor harmless.") (citing *Davis v. U.S. Bancorp*, 383 F.3d 761, 765 (8th Cir. 2004)).

Here, there is no prejudice as the medical records produced by the Black Hills Orthopedic & Spine Center as a result of the altered medical authorization did not include records related to drug/alcohol abuse or HIV/AIDS and included only those already provided by Plaintiff in his initial disclosures. (Doc. at 89). This Court is troubled by the fact that no one from Defendant's law firm has entered an affidavit as to what happened or did not happen. Gillian Grunkemeyer, paralegal from the Boulder, Colorado, office of the Knight Nicastro McKay law firm, faxed the cover letter and medical release to the Black Hills Orthopedic & Spine Center on May 16, 2023. The Court orders that discovery will be reopened so that Plaintiff's counsel can take the deposition of Gillian Grunkemeyer and report back to the Court.

### III. Motion to Compel Production of Executed Medical Records Authorizations

Pending before the Court is Defendant's Motion to Compel Production of Executed Medical Records Authorizations. (Doc. 85).

### A. Background

On November 18, 2022, as part of RCPE's Requests for Production of Documents to Plaintiff, Defendant requested that Plaintiff produce signed authorizations to enable Defendant to obtain Plaintiff's medical records. (Doc. 86 at 3241). Specifically, Defendant requested that Plaintiff produce the following:

> REQUEST NO. 4:   All medical records from the last ten years from any hospital physician, surgeon, chiropractor, therapist, or other health provider.
>
> REQUEST NO. 5:   Signed authorizations, including authorizations in compliance with the Health Insurance Portability and Accountability Act ("HIPAA") to enable defendants to reasonable obtain other discoverable records.

(Doc. 105) (citing Doc. 64-1). Plaintiff objected to Defendant's request as over-broad on the basis that the information sought fell outside the scope of discovery pursuant to Fed. R. Civ. P. 26(b)(1),

was not proportional to the needs of the cases, and was privileged medical information not put at issue by Plaintiff. (Docs. 86 at 3242; 105 at 3671; 64-2). On February 10, 2022, Plaintiff produced medical authorizations to Michael Morningstar, RCPE Claims Department, for Rehab Doctors, Rapid City Medical Center, M Health Fairview U of M Medical Center, Horse Sense Counseling, and Black Hills Orthopedic & Spine Center. (Doc. 105 at 3671-72) (citing Doc. 64-3). On March 7, 2023, Plaintiff drafted and produced tailored medical records release authorizations to Defendant for Rehab Doctors, Starseed Acupuncture & Wellness, Rapid City Medical Center, M Health Fairview U of M Medical Center, Horse Sense Counseling, Black Hills Orthopedic & Spine Center, and Rapid City Medical Center South. (Doc. 105 at 3672) (citing Doc. 64-3).

On June 5, 2023, Plaintiff agreed to provide a provider-specific authorization for Black Hills Orthopedic & Spine Center. (Doc. 90-10). Later, on June 8, 2023, Defendant asked for additional authorizations for Walmart Pharmacy, CVS Specialty Pharmacy, Fairview Pharmacy, and Rushmore Compounding Pharmacy. On June 15, 2023, Plaintiff mailed authorizations, identical to the previous authorizations, but updated to include those providers. (Doc. 105 at 3672) (citing Doc. 87-3). On June 19, 2023, Plaintiff mailed to defense counsel medical authorizations he had drafted for Optum Specialty Pharmacy, Wellmark BCBS, and Monument Health. (Doc. 105 at 3672) (citing Doc. 87-4). The medical authorization was sent to Wellmark on July 11, 2023. (Doc. 86 at 3242).

On June 23, 2023, as part of its Fourth Supplemental Responses to Plaintiff's Request for Production of Documents, Plaintiff was provided a copy of an executed medical request sent to Black Hills Orthopedic Spine Center by Gillian Grunkemeyer. Plaintiff discovered that the previously provided authorization had been altered. (Doc. 105 at 3672) (citing Doc. 64-5).

On July 13, 2023, defense counsel received correspondence from Wellmark indicating that the records request had been rejected, citing that the release was not compliant with federal privacy regulations and did not contain required confidentiality requirements. (Doc. 87-5). Wellmark provided its own drafted authorization for Plaintiff's signature. (Doc. 87-5). On July 20, 2023, one day after the close of discovery, defense counsel contacted Plaintiff's counsel to notify them of the Wellmark rejection. (Doc. 87-6). Defense counsel attached a copy of the authorization that had been provided by Wellmark, asking Plaintiff to execute the same. (Doc. 87-6). No response from Plaintiff's counsel was ever received. (Doc. 86 at 3242).

On July 27, 2023, Walmart Pharmacy contacted defense counsel notifying them that the records request submitted had been rejected. (Doc. 87-7). In the rejection letter, Walmart Pharmacy indicated that the authorizations that Plaintiff had drafted were not compliant with state and federal law. (Doc. 87-7). Walmart also provided an approved authorization form for Plaintiff's signature. (Doc. 87-7). On August 4, 2023, defense counsel contacted Plaintiff's counsel to request that the attached provider specific authorizations be executed for both Wellmark and Walmart Pharmacy. (Doc. 87-8). No response was received from Plaintiff. (Doc. 86 at 3243).

On August 18, 2023, Plaintiff filed a Motion for Sanctions detailing Plaintiff's concerns with the altered medical authorization faxed to Black Hills Orthopedic & Spine which Plaintiff had discovered on June 23, 2023. (Doc. 62). On August 31, 2023, defense counsel wrote to Plaintiff's counsel once more requesting that both the Wellmark and Walmart Pharmacy authorizations be executed without addressing Plaintiff's concerns regarding the altered medical authorization. (Doc. 87-9). In this email, defense counsel indicated that it would seek court intervention if these releases were not provided in a timely manner. (Doc. 87-9). No response was received. (Doc. 86 at 3243). On September 8, 2023, Defendant filed the present Motion to Compel. (Doc. 85).

### B. Discussion

In his response to the Motion to Compel, Plaintiff provides that:

> As this Court is aware, the Defendant's Motion to Compel Production of Executed Medical Authorization Records is part of a larger concern Plaintiff has concerning medical authorizations in the case. Plaintiff requests that this Court include the issues raised by Plaintiff concerning Defendant RCPE's alleged mishandling of medical authorizations when examining Plaintiff's response.

(Doc. 105 at 3673). Plaintiff explains in his opposition brief that "[d]ue to the concerns surrounding authorizations, Plaintiff has requested medical records from the Wellmark and Walmart pharmacies. Plaintiff will promptly produce those records upon their receipt." (Doc. 105 at 3674). Plaintiff provides that he "is in the process of obtaining the medical records sought in Defendant's motions and the records will be produced upon receipt. Further, Plaintiff fully and fairly participated in discovery providing all authorizations requested until Plaintiff learned of the [altered] authorization and Defendant's request for supplemental authorizations came after the close of discovery." (Doc. 105 at 3674).

Defendant has not filed a Reply brief to Plaintiff's opposition brief in which Plaintiff indicated that he would be providing the records requested. Since Defendant's Motion to Compel was filed on September 8, 2023, Defendant has not indicated to the Court that such records have not been received. The Court finds that Plaintiff had legitimate concerns after the June 23, 2023, discovery of the altered medical authorization to Black Hills Orthopedic & Spine and Plaintiff seems to have otherwise provided all the authorizations requested. Accordingly, Defendant's Motion to Compel is denied as moot.

### IV.   A Word to the Parties

There has been an extraordinary amount of contention in this and the *Hendrickson* case which arises from the same incident, Civ. No. 22-5063. The parties shall proceed within the true spirit of the discovery procedures in federal court and if differences arise, work responsibly to resolve those differences before returning to the Court to resolve every dispute.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's Motion for Sanctions (Doc. 57) is granted in part as described in this Opinion and the Court will allow Plaintiff until April 1, 2024, to retake any depositions he deems necessary and order that Defendant shall bear the associated costs, including court reporter and attorneys' fees associated with these depositions;

2. Defendant's Motion to Compel (Doc. 85) is denied as moot;

3. Defendant's Motion for Hearing Requesting Status Conference (Doc. 91) is DENIED; a status conference had been set for December 6, 2023, but was cancelled due to the Judge's oral surgery;

4. The Motion for Rule 35 Examination by Dr. Rone (Doc. 36) and Defendant's Motion to Compel (Doc. 85) having been resolved, Defendants Motion for Protective Order for a Rule 30(b)(6) deposition of RCPE's corporate designee (Doc. 98), noticed for September 21, 2023, is DENIED.

Dated this 23rd day of January, 2024.

BY THE COURT:

*Lawrence L. Piersol* (signature)

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

*Matthew Thelen* (signature)

17